**Evel Yn TUBENS, Plaintiff,**

v.

**POLICE DEPARTMENT OF THE CITY OF NEW YORK, Defendant.**

**No. 95 Civ. 4897(JES).**

United States District Court, S.D. New York.

June 1, 1999.

**414**

Evelyn Tubens, New York City, pro se.

Michael D. Hess, Corporation Counsel of the City of New York, New York City, for Defendant, Colleen Martin, Assistant Corporation Counsel, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Evelyn Tubens ("Tubens"), a former employee of the New York City Police Department ("NYPD"), proceeding *pro se,* brings the instant action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Tubens alleges that the NYPD wrongfully terminated her employment on the basis of an actual or perceived physical disability and on the basis of her race and sex. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant moves for summary judgment. For the reasons stated below, defendant's motion for summary judgment is granted.

## *BACKGROUND*

Tubens, a Hispanic female, was employed by the NYPD as a probationary police officer. *See* Plaintiff's Local Civil Rule 3(g) Statement of Disputed Facts ("Pl.3(g)") ¶ 1; Defendant's Notice of Motion for Summary Judgment, dated February 7, 1997 ("Def.Motion"), Exh. B, Charge of Discrimination ("Charge"). She commenced training at the Police Academy on June 30, 1992. *See* Pl. 3(g) ¶¶ 16, 17. In July 1992, Tubens reported to her gym instructor, Officer Frank Mazzone, that she was suffering a chest cold and was not feeling well enough to participate in gym class. *See id.* ¶ 19. When Officer Mazzone asked Tubens if anything else was wrong with her, she responded that she had a heart condition known as mitral valve prolapse ("MVP"). *See id.* ¶¶ 20, 21. She was thereafter placed on limited duty and was told that she could not participate in physical training until she received medical clearance. *See id.* ¶ 21.

Tubens then visited her own physician, Dr. Alan Engelman. Dr. Engelman provided Tubens a note stating that she

> has aortic insufficiency ... and need not be restricted with respect to strenuous aerobic exercise[,] however, would avoid *regular* strenuous isometric exercise, (i.e. *regular* heavy weight lifting)occasional, O.K.

*Id.* ¶ 24; Def. Motion Exh. J (emphasis in original). Tubens presented the note to her gym instructor, who told her that she would have to report to the district surgeon. *See id.* ¶ 25. The district surgeon then referred Tubens to Dr. William Pettite, a cardiologist. *See id.* 26. Dr. Pettite examined Tubens and confirmed that Tubens did in fact have MVP and a slight enlargement of the heart. *See id.* ¶ 27.

On August 3, 1992, the commanding officer of the Police Academy requested that Tubens be reevaluated by the supervising chief surgeon. Def. Motion Exh. K. The chief surgeon determined, *inter alia,* that based on Dr. Engelman's diagnosis, Tubens should avoid regular strenuous isometric exercises. *See* Def. Motion Exh. L, Letter from Supervising Chief Surgeon to Chief of Personnel, October 28, 1992. According to the chief surgeon, such isometric exercise would include rapid running, combat training, climbing stairs rapidly, and carrying an injured person. *See id.* The chief surgeon concluded that Tubens was not capable of performing the physical activities needed to continue police training or to perform police duties. *See id.* ¶ 8. The surgeon recommended that Tubens be dismissed from duty. *See id.* On

November 13, 1992, Tubens's employment with the NYPD was terminated. *See* Pl. 3(g) ¶ 34.

On July 21, 1993, Tubens filed a complaint with the New York City Commission on Human Rights alleging that the NYPD discriminated against her in violation of the ADA and Title VII. *See id.* ¶ 2; *see also* Def. Motion Exh. B. Specifically, Tubens claimed that her employment was terminated because she has MVP and because she is a Hispanic female. *See* Pl. 3(g) ¶¶ 3,4; *see also* Def. Motion Exh. B. Tubens asserted that she was fully capable of performing the duties of a police officer and that the NYPD had shown no justification for her termination. *See* Pl. 3(g) ¶ 5; Def. Motion Exh. B.

On June 29, 1994, Tubens filed an affidavit with the EEOC in which she restated and clarified her claims. The affidavit claimed, *inter alia*, that the NYPD terminated her employment either because of an actual disability or because of a "perceived" disability. *See* Def. Motion Exh. C. The EEOC treated this affidavit as an amendment to her original charge of discrimination. Because she had filed the affidavit more than 300 days after her discharge from the NYPD, the EEOC found the amendment untimely and dismissed her disability discrimination claim. *See* Def. Motion Exh. D. The EEOC also dismissed Tubens's additional race and sex claims. *Id.* Tubens thereafter commenced the instant action.

The parties having completed discovery, the NYPD now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The NYPD argues that (1) Tubens is not an individual with a disability protected by the ADA; (2) Tubens's perceived disability claim is time-barred; (3) Tubens fails to establish a *prima facie* case with respect to her race and sex discrimination claims; and (4) even if Tubens has established a *prima facie* case, the NYPD has articulated a legitimate nondiscriminatory basis for its action, and Tubens has offered no evidence that she was discharged for discriminatory reasons.

Tubens has filed a *pro se* memorandum in opposition to the NYPD's motion in which she asserts that (1) she is an individual with a perceived disability protected by the ADA; (2) her perceived disability claim was timely filed; (3) she has established a *prima facie* case with respect to her Title VII claims; and (4) the NYPD has not articulated a legitimate nondiscriminatory reason for her discharge.[1]

### DISCUSSION

A court may grant summary judgment only if it determines that there are no genuine issues of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *See* Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

### Tubens's ADA Claim

The Second Circuit has cautioned against dismissing an ADA claim on a motion for summary judgment because the employer's intent is often at issue and is difficult to determine without carefully examining the surrounding facts. *See*

---

1. Tubens does not argue that she has an actual disability under the ADA, nor has she presented any evidence that suggests she could prevail upon a claim of actual disability.

Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.1997); Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir.1994). However, a plaintiff must provide more than a conclusory allegation of discrimination to defeat a motion for summary judgment. See Schwapp, 118 F.3d at 110. Summary judgment remains appropriate where there are no genuine issues of material fact. See McLee v. Chrysler Corp., 109 F.3d 130, 135–37 (2d Cir.1997).

█ A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case. See Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869 (2d Cir.1998). In order to establish a prima facie case of discriminatory discharge, a plaintiff must show that (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she was fired because of her disability. See id. at 869–70. Defendant argues that Tubens cannot satisfy the second of these elements, that she suffers from a disability within the meaning of the ADA.

Under the ADA, a plaintiff will be classified as "disabled" if she shows that she has a physical or mental impairment that substantially limits one or more of her major life activities, has a record of such an impairment, or is perceived by her employer as having such an impairment. See 42 U.S.C. § 12102; Colwell v. Suffolk County Police Dept., 158 F.3d 635, 641 (2d Cir. 1998). In this case, Tubens claims that the NYPD discharged her because it perceived her as suffering from an impairment that substantially limits a major life activity.

*Tubens's Perceived Disability Claim Is Not Time–Barred.*

As an initial matter, this Court must determine whether Tubens's claim of perceived disability discrimination is time-barred. The enforcement provisions of Title VII of the Civil Rights Act of 1964 are applicable to actions brought under the ADA. See 42 U.S.C. § 12117(a). Thus, under the ADA, as under Title VII, a plaintiff must file a charge of discrimination with the EEOC within 300 days after the occurrence of the last discriminatory event alleged. See 42 U.S.C. § 2000e–5(e)(1); see also Butts v. City of N.Y. Dept. of Housing Preservation and Dev., 990 F.2d 1397, 1401 (2d Cir.1993). A plaintiff's failure to file a timely charge of discrimination with the EEOC ordinarily renders the claim time-barred.

The EEOC determined, and defendant now argues, that Tubens's perceived disability claim was untimely because it was filed more than 300 days after her discharge. See Def. Motion Exh. D. Defendant asserts that Tubens's original claim with the New York City Commission on Human Rights, filed on July 20, 1993, alleges only that she was discharged because of an actual disability. The term "perceived disability" is first mentioned in a subsequent affidavit filed with the EEOC on June 29, 1994—more than 300 days after Tubens's dismissal. Defendant therefore asks this Court to find Tubens's perceived disability claim to be time-barred.

█ Although the term "perceived disability" does not appear in the original Charge, a careful reading of the Charge indicates that Tubens did in fact sufficiently allege a claim of perceived disability discrimination. Indeed, Tubens asserts in the Charge that she is not actually disabled under the meaning of the ADA, claiming that she is fully capable of performing her duties as a police officer and that her "disability in no way prevents her from leading a healthy and active life." Def. Motion Exh. B. The gravamen of Tubens's original Charge is that the NYPD exaggerated the significance of her MVP and erroneously determined that she could not meet the physical demands of her job. Fairly read, Tubens's original

Charge, which defendant concedes was timely filed, alleges a claim of perceived disability discrimination. Thus, this Court finds that her perceived disability claim is not time-barred.

Further, assuming *arguendo* that Tubens did not sufficiently allege a perceived disability claim in her original charge, her perceived disability claim as articulated in her subsequently-filed affidavit still would not be time-barred because her perceived disability claim is "reasonably related" to the claim articulated in the original charge. The Second Circuit has held that, in certain situations, a plaintiff may be allowed to litigate claims not specifically alleged in an EEOC charge where the unalleged claims are sufficiently related to the allegations in the charge. *See Butts,* 990 F.2d at 1402. A claim will be deemed to be sufficiently related to the original charge where "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* Here, Tubens alleged that she was terminated because of her heart condition. Whether she was ultimately terminated because MVP constitutes an actual disability or because the NYPD incorrectly perceived officers with MVP to be disabled, the scope of the EEOC investigation would remain substantially the same. Both claims require an analysis of the same facts and turn upon similar legal issues. Under these circumstances, Tubens's original charge should be read broadly to include a claim of perceived disability.

*The NYPD Did Not Perceive Tubens to be Disabled.*

■ Under the ADA, in order for a plaintiff to establish a *prima facie* case of perceived disability discrimination, it is not enough for a plaintiff to show that the employer perceived her to be physically or psychologically impaired; rather, the plaintiff must show that the employer regarded her as disabled within the meaning of the ADA. *See Colwell,* 158 F.3d at 646.

As discussed above, the ADA defines "disability" as an impairment that substantially limits a major life activity. Thus, in order for Tubens to prevail, she must provide evidence that the NYPD perceived her as having an impairment that substantially limits one or more of her major life activities.

Although the ADA does not define "major life activities" or what constitutes a "substantial limitation," the regulations promulgated by the EEOC under the ADA provide some guidance in interpreting these terms. *See e.g., Francis v. City of Meriden,* 129 F.3d 281, 283 n.1 (2d Cir. 1997) (courts should afford great deference to the EEOC regulations interpreting the ADA). The EEOC regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). In addition to these examples, the federal courts also have recognized other similar activities, including sitting, standing, and lifting, as major life activities. *See e.g., Ryan,* 135 F.3d at 870 (citing U.S. Equal Employment Opportunity Commission, Americans with Disabilities Act Handbook I–27 (1992)). The only major life activity upon which Tubens relies to support her claim of actual or perceived disability is that of working.

■ The EEOC regulations provide additional guidance for determining whether an individual is substantially limited in the major life activity of working. A plaintiff's ability to work is substantially limited if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). However, the regulations make clear that "the inability to perform in a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* Nor will an impairment that disqualifies an individual from only a narrow range of jobs be considered a disability. *See Ryan,* 135 F.3d at 872; *Heilweil v. Mount Sinai*

*Hospital,* 32 F.3d 718, 723 (2d Cir.1994). Thus, Tubens must come forward with some evidence supporting an inference that the NYPD perceived her heart condition as rendering her incapable of performing a class of jobs or a broad range of jobs suitable for a person of her age, experience and training. *See Ryan,* 135 F.3d at 872. She has failed to provide any such evidence.

■ Tubens argues that the NYPD perceived her as substantially limited in her ability to work because the NYPD perceived her to be unfit to be a police officer. The NYPD admits that Tubens was terminated because it concluded that she lacked the physical endurance to perform her duties. However, as noted above, Tubens cannot prove that the NYPD perceived her as disabled within the meaning of the ADA merely by proving that the NYPD believed her to be unfit for the single job of police officer. Tubens thus attempts to show that the NYPD regarded her as substantially limited in a broad range of jobs by pointing to the physical limitations described in the NYPD's supervising surgeon's report and arguing that any person with such limitations would in fact be disabled under the ADA. Tubens correctly notes that the NYPD determined that she should avoid isometric exercise, might experience chest discomfort accompanied by illness as a result of her impairment, and might also require surgery to correct her condition. Tubens argues that these physical limitations would make her unfit for the many jobs that require regular strenuous exercise, including fire fighter, construction worker, and personal trainer. Although a jury might reasonably infer that the NYPD perceived Tubens to be unqualified for such positions, the Court concludes that Tubens's proffered list of physically demanding jobs constitutes neither a "class of jobs" nor a "broad range of jobs in various classes" under the applicable EEOC regulations and the case law.

The Court finds particularly instructive the recent Second Circuit decision in *Col-*

*well v. Suffolk County Police Dept.,* 158 F.3d 635 (2d Cir.1998). In that case, three police officers brought an action under the ADA claiming that they had been denied promotions on the basis of their physical disabilities. Two of the officers claimed that their physical impairments rendered them substantially limited in their major life activity of working. Sergeant Richard Abrams testified that as a result of injuries, he was unable to stand or sit for long periods of time, lift heavy objects, bend over for long periods, or reach up continuously. *Id.* at 640. Sergeant Abrams claimed that he could not get in and out of a car excessively nor could he do excessive driving. *Id.* Sergeant Abrams's physician testified that Abrams was not capable of any physical confrontation but was capable of doing sedentary work, provided that he had a chance to get up and change position. *Id.* Sergeant Charles Ellinger claimed that because of injuries suffered as a result of a cerebral hemorrhage, he could not do physical work or heavy lifting. *Id.* His physician recommended that he avoid stress and confrontation and that at no time should he work late hours or rotating shifts. *Id.* at 641.

The court nevertheless held that neither Sergeant Abrams nor Sergeant Ellinger demonstrated that their physical impairments rendered them significantly restricted in their ability to work. The court held that Abrams failed to prove that his limitations at work "significantly restrict his ability to perform either a class of jobs or a broad range of jobs ... as compared to the average person having comparable training, skills and abilities." *Id.* at 644. Because Abrams proved only that his impairment disqualified him from a narrow range of jobs—*i.e.* those requiring physical confrontation—his impairment did not substantially limit his ability to work. *See id.* As for Sergeant Ellinger, the court held that the evidence he presented concerning his general physical limitations was insufficient to prove a substantial limitation in the ability to work at a class or broad

range of jobs. *Id.* at 645. The court stated that, without specific evidence about the kinds of jobs from which an individual with his claimed limitations would be disqualified, a jury could not find him substantially limited in his ability to work. *Id.*

Here, Tubens has failed to make a sufficient showing that the NYPD perceived her as unqualified to perform a class of jobs or a broad range of jobs. Tubens has demonstrated at most that the NYPD perceived her as substantially limited in performing only a narrow range of jobs—those requiring regular strenuous isometric exercise. Nor has Tubens provided specific evidence about the kinds of jobs for which she alleges the NYPD perceived her to be disqualified. Because Tubens cannot show that the NYPD perceived her as substantially limited in her ability to perform a class or a broad range of jobs, she fails to establish a *prima facie* case of perceived disability discrimination. The Court therefore grants defendant summary judgment on Tubens's claim under the ADA.

### Tubens's Title VII Claim

A plaintiff in a Title VII action bears the initial burden of establishing a *prima facie* case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This burden, however, is a light one. *See Chertkova v. Connecticut General Life Insurance Co.,* 92 F.3d 81, 87 (2d Cir.1996). A plaintiff establishes a *prima facie* case by showing (1) that she is a member of a protected class; (2) that she was qualified for the position she held; (3) that she was discharged; and (4) that the position remained open and the employer continued to seek applicants with the plaintiff's qualifications. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. A plaintiff who establishes a *prima facie* case has set forth sufficient facts upon which a finding of discrimination by the employer can be predicated. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d

407 (1993); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The burden then shifts to the defendant to "articulate some legitimate non-discriminatory reason for the employee's rejection." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 (quoting *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668). If the defendant carries this burden, then the plaintiff must prove that the action taken against her was the result of unlawful discrimination, a burden she may discharge by establishing by a preponderance of the evidence that the legitimate reason offered by the defendant is merely a pretext for the employer's actual discriminatory reasons for terminating the plaintiff's employment. *See id.*

Assuming without deciding that Tubens has established a *prima facie* case, no rational finding of discrimination could be sustained on the facts presented here. The NYPD claims that Tubens was discharged because of her physical limitation, and this reason is supported by undisputed evidence before the Court on the motion. She was allowed to participate in physical training until she approached her gym instructor and mentioned that she suffered from MVP. She then was instructed that in order to continue training she would be required to obtain medical clearance. Tubens's own physician determined that she should avoid strenuous isometric exercise and regular heavy lifting. The NYPD surgeon concluded that, based on the diagnosis of Tubens's own physician, she could not perform the physical activities of a police officer, whereupon Tubens was dismissed.

■ Moreover, Tubens has presented no evidence that the reason advanced by the NYPD for her dismissal was merely a pretext to conceal discrimination. In fact, Tubens admitted in her deposition that the only basis for her claims of race and sex discrimination was that she was the only woman in her class and that she had heard

some racist remarks from classmates. *See* Def. Motion Exh. .I, Deposition of Evelyn Tubens, February 26, 1996, at 62–63. When asked if she knew of anyone in a supervisory position who displayed discriminatory behavior, she answered "No." *Id.* at 63. Although Tubens does allege that a male classmate who was also asked to have heart tests refused to submit to an examination and was not terminated, she fails to offer any evidence regarding the nature of his condition or the limitations his heart condition imposed upon him. *Id.* at 74–75. It follows that Tubens could not establish by a preponderance of the evidence at trial that the NYPD terminated her employment on the basis of her race or sex or perceived disability.

### CONCLUSION

For all of the foregoing reasons, the Court grants defendant's motion for summary judgment. The Clerk of Court is directed to enter Judgment accordingly and to close this action.

It is **SO ORDERED.**