Charles J. EDWARDS, Plaintiff,

v.

**BROOKHAVEN SCIENCE ASSOCIATES, LLC, Defendant.**

No. 03–CV–6123(ADS)(JO).

United States District Court, E.D. New York.

Sept. 10, 2005.

226

Michael J. Regan, Esq., Sayville, NY, for Plaintiff.

Proskauer Rose, LLP, Newark, NJ, by Edward Cerasia, II, Esq., Elana Gilaad, Esq., Christie Del Rey–Cone, Esq., of Counsel, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is a case brought by Charles J. Edwards ("Edwards" or the "Plaintiff") against his former employer the Brookhaven Science Associates, LLC ("BSA" or the "Defendant") under the Americans with Disabilities Act ("ADA") alleging claims of hostile work environment and retaliatory discharge. Presently before the Court are motions by the Defendant for summary judgment and to strike the Plaintiff's demand for compensatory damages and a jury trial.

## I. BACKGROUND

The Brookhaven National Laboratory ("BNL") is a research facility operated by BSA pursuant to a contract between the BSA and the United States Department of Energy ("DOE"). Edwards was employed by BSA as a Security Police Officer II ("SPO") at BNL. SPOs are responsible for protecting the facility and the interests of the DOE. In that capacity, the SPOs are trained and required to carry a .38 caliber

revolver and a MP5 machine gun as part of their official duties. The weapons are kept at the BNL armory and issued to the SPO each day when they start their shift. In order to carry these weapons, the DOE requires that all SPOs obtain and maintain a DOE-issued Firearm Authority Card ("FAC").

Edwards commenced employment as a SPO on March 26, 1990, and remained in that position until the termination of his employment on November 8, 2002. On July 11, 2001, Edwards was participating in a routine training procedure at the BNL firing range called a "stress course," which requires officers to run with their equipment, stop, and then load and fire their weapon. During this training exercise, Edwards' left hand slipped off the stock of the MP5 and onto the hot vent and barrel of the weapon. As a result, Edwards burned his left index finger. Edwards was taken to a local hospital via ambulance and treated for his injuries. The firing range was subsequently closed after this incident for an unknown period of time and BSA conducted an investigation.

Edwards was medically cleared to return to work approximately one week after the injury and BSA permitted Edwards to perform clerical work in the security building. As a result of the investigation that followed, Edwards was not disciplined for the incident, but it was recommended that he undergo re-training on the MP5 and .38 caliber revolver. Edwards participated in and completed a retraining course for every procedure on both weapons and he was also re-certified in connection with his annual qualifications for maintaining his FAC.

During the period of his retraining, Edwards claims that he was continually harassed by Training Specialist in Safeguards and Security Kathleen Walker ("Walker") and by Training Captain Michael Delph ("Captain Delph"). The harassment consisted of threats of retaliation for having caused the range to be closed; repeatedly asking the Plaintiff to see his finger; changes in his work schedule; publicly displayed BSA safety bulletins referring to the July 11, 2001 incident; and at least one incident where Captain Delph placed a rubber finger in a petri dish on a table in the cafeteria while a number of employees were present. Captain Delph allegedly made comments such as, "Let me see your finger. You closed my range. You are going to get more training." As a result of these incidents, on November 20, 2001, Edwards filed a charge of disability discrimination with the New York State Division of Human Rights and the Equal Employment Opportunity Commission.

On October 16, 2002, Edwards was involved in an accidental discharge of his MP5 while he was being issued his weapon at the BNL armory. When SPOs obtain their weapons from the armory, they are required to point the unloaded gun into a clearing barrel, rack it, remove the safety, pull the trigger, and place the magazine in the gun. A clearing barrel is a 55–gallon drum filled with sand that is intended to function as a repository in the event of an accidental discharge. Edwards acknowledged that he had made a human error in loading his weapon, which caused the accidental discharge.

After the incident, Edwards continued to work for BSA but was not permitted to carry a weapon. The BSA's Firearm Safety Committee ("FSC") met to investigate the accidental discharge. The investigation into the accidental discharge was the first investigation that the FSC had conducted regarding an accidental discharge since 1988. After the investigation, the FSC concluded that the accidental discharge was due to human error and rec-

ommended that Edwards' authority to carry a firearm at BNL be rescinded. That recommendation was forwarded to BSA management, who concurred. The recommendation was eventually forwarded to the DOE, the entity charged with issuing the weapons permit, for consideration. On November 4, 2002, the DOE issued an order revoking Edwards' FAC. Once revoked, Edwards could not carry a firearm as required to perform his duties as a SPO. At the time, there were only two positions in the BSA police organization that did not require a FAC and both of the positions were filled. On November 8, 2002, Edwards' employment was terminated. BSA advised Edwards that his employment was terminated because he had two incidents with his MP5 in a sixteen month period and the DOE had revoked his FAC.

In this lawsuit Edwards contends that his termination was in retaliation for the previous filing of a complaint of disability discrimination. In his complaint in this action, he seeks compensatory damages and pleads two federal claims under the ADA: (1) a disability-based hostile work environment claim under 42 U.S.C. § 12112(a); and (2) a retaliatory discharge claim under 42 U.S.C. § 12203. The Defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") for summary judgment dismissing the complaint and, in the alternative, to strike the Plaintiff's demand for compensatory damages and a jury trial relating to the retaliatory discharge claim.

## II. DISCUSSION

### A. The Summary Judgment Standard

Summary judgment is appropriate if the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see*

*also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986); *Wilkinson v. Russell,* 182 F.3d 89 (2d Cir.1999); *Turner v. General Motors Acceptance Corp.,* 180 F.3d 451 (2d Cir. 1999); *In Re Blackwood Associates, L.P.,* 153 F.3d 61, 67 (2d Cir.1998) (citing Fed. R.Civ.P. 56(c)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Amato v. City of Saratoga Springs,* 170 F.3d 311, 322 (2d Cir.1999) (citing *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997)); *Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 137 (2d Cir.1998) (citing *Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988)). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only

determine whether there are issues to be tried").

## B. The Disability–Based Hostile Work Environment Claim

The Second Circuit has not directly addressed whether the ADA gives rise to a cause of action for hostile work environment. *See, e.g., Bonura v. Sears Roebuck & Co.,* 62 Fed.Appx. 399, 400 n. 3 (2d Cir.2003). However, several other circuit and district courts have recognized such claims. *See, e.g., Fox v. GMC,* 247 F.3d 169, 176 (4th Cir.2001); *Flowers v. S. Reg'l Physician* Servs., 247 F.3d 229, 232–35 (5th Cir.2001); *De La Cruz v. Guilliani,* No. 00–7102, 2002 WL 32830453, at *9, 2002 U.S. Dist. LEXIS 19922, at *28 (S.D.N.Y. Aug. 23, 2002); *Hendler v. Intelecom USA, Inc.,* 963 F.Supp. 200, 208 (E.D.N.Y.1997); *Hudson v. Loretex Corp.,* 1997 U.S. Dist. LEXIS 4320, No. 95–844, 1997 WL 159282, at *2–3 (N.D.N.Y. Apr. 2, 1997).

■ Regardless of the whether the ADA does allow for a hostile work environment claim, a plaintiff suing for disability discrimination must establish a prima facie case of discrimination under the ADA. *See Regional Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 49 (2d Cir.2002); *Balonze v. Town Fair Tire Ctrs., Inc.,* No. 02–2247, 2005 WL 752198, *8, 2005 U.S. Dist. LEXIS 5317, 25–26 (D.Conn. March 31, 2005); *see also Fox,* 247 F.3d at 177 (stating elements of an ADA based hostile work environment claim). Because this Court finds that the Plaintiff cannot establish a prima facie case of discrimination under the standards used in ADA cases, this Court need not reach the issue of whether the ADA supports a cause of action for hostile work environment.

■ In order to establish a prima facie case of discriminatory discharge, a plaintiff must show that: (1) the employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of the disability. *See Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998).

In *Fox,* the Fourth Circuit incorporated the elements of a prima facie case of discrimination under the ADA into the elements necessary to establish an ADA-based hostile work environment claim. 247 F.3d at 177. The court stated that the plaintiff must prove:

> (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

*Id.*

■ The crucial issue in this case is whether the Plaintiff was a qualified individual with a disability under the ADA at the time of the harassment. Title 42 U.S.C. § 12102(2) defines a disability as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

*Id.*

In this case, Edwards does not claim that he ever had a physical or mental impairment that substantially limits his life activity. Rather, Edwards claims that he suffered harassment because BSA employees perceived or regarded him as disabled.

Under the ADA, a plaintiff is considered "disabled" if he can show that he is perceived by his employer as having such an impairment. *Id.; Colwell v. Suffolk County Police Dept.,* 158 F.3d 635, 641 (2d Cir.1998); *see, e.g., Tubens v. Police Dep't,* 48 F.Supp.2d 412, 416 (S.D.N.Y.1999).

■ An employee can be "regarded" or "perceived" as disabled in two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 2149–50, 144 L.Ed.2d 450 (1999). Edwards' allegation falls within the first category, that is, Edwards' argues that BSA mistakenly believed he had a physical impairment that substantially limits one or more major life activities.

■ To succeed under this "perceived" or "regarded as" ADA claim, a plaintiff must show more than "that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." *Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 201 (2d Cir.2004) (quoting *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 646 (2d Cir.1998)). The Second Circuit uses a three-step process for determining whether a plaintiff has a "disability" that is protected by the ADA. *Id.* The court considers: "(1) whether the plaintiff suffered from a physical or mental impairment, (2) whether the life activity upon which the plaintiff relied constitutes a major life activity under the ADA, and (3) whether the plaintiff's impairment substantially limited the major life activity identified." *Id.* (quoting *Colwell,* 158 F.3d at 641) (citations and quotations omitted).

■ The Supreme Court has noted that "merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). A plaintiff must also demonstrate that the impairment substantially limits a major life activity. *See* 42 U.S.C. § 12102(2)(A). The term "major life activity" is defined by the regulations as including functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). In addition, to qualify as "disabled," a plaintiff must show that the limitation on the major life activity is "substantial." 42 U.S.C. § 12102(2)(A). Thus, in order to be considered "substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." *Toyota Motor Mfg.* at 198, 122 S.Ct. 681, 151 L.Ed.2d 615.

■ In *Giordano v. City of New York,* 274 F.3d 740, 748 (2d Cir.2001), the Second Circuit analyzed the same decisive issue as is presented in this case, that is, the employer's perception of his or her employee's alleged impairment. In that case, the plaintiff was a police officer who claimed that the defendants mistakenly believed he was unable to perform his job as a police officer because of his use of the drug Coumadin. "The decisive issue ... [was] whether the plaintiff introduced evidence to support the allegation that the defendants regarded him as disqualified not only from full-duty patrol as an NYPD police officer but from 'working.'" *Id.* at 749. The court affirmed the dismissal of the plaintiff's claim because he was unable

to adduce any evidence that suggested that the defendants perceived him as unable to work in a "broad class of jobs." *Id.* at 750. The court found it irrelevant that the plaintiff was able to show that the defendant regarded him as disabled from police work that involved a substantial risk of physical confrontation. *Id.* at 749.

Similarly, here the Plaintiff has failed to come forward with any evidence that suggests that the Defendant perceived him as unable to work in a broad class of jobs. In addition, the Plaintiff cannot show that the defendants regarded him as having an impairment "that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg.,* 534 U.S. at 198, 122 S.Ct. 681, 151 L.Ed.2d 615. The undisputed evidence shows that Edwards' July 2001 finger injury was "temporary" and did not limit his ability to perform daily tasks. Indeed, BSA assigned Edwards to clerical work as soon as he was medically cleared to return to work. As in *Giordano,* there is no evidence that the defendant regarded him as disabled from anything more than specific duties that require the ability to use and carry a firearm. The Supreme Court has noted, "the manual tasks unique to any particular job are not necessarily important parts of most people's lives." *Toyota Motor Mfg.,* 534 U.S. at 201, 122 S.Ct. 681. Thus, being unable to do a specific job-related task is insufficient proof of a disability under the ADA. *See, e.g., Balonze,* 2005 WL 752198, 2005 U.S. Dist. LEXIS 5317 (D.Conn.2005). Accordingly, the Court finds that the Plaintiff has failed to set forth any evidence that his injury was perceived as a qualified disability under the ADA. For this reason, the Court grants the Defendant's motion for summary judgment and dismisses Edwards' ADA disability discrimination and hostile work environment harassment claims.

## C. The Retaliation Claim

### 1. The Summary Judgment Motion

 To establish a prima facie case for retaliation under the ADA, a plaintiff must allege that: "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999). A causal connection "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia University College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). The causal connection can also be established "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Knight v. City of New York,* 303 F.Supp.2d 485, 496 (S.D.N.Y.2004) (quoting *Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000)).

In a motion for summary judgment, once the plaintiff has alleged a prima facie case the burden shifts to the employer to rebut the presumption of discrimination by articulating a legitimate nondiscriminatory reason for the termination or adverse employment action. *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 446 (2d Cir.1999) (citations omitted). The employer merely needs to "explain what he has done." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089 (citations omitted). Should the employer carry this burden, the question then turns to whether the plaintiff can prove that the employer's proffered reason was not the true reason or the only reason for the termination and was rather a pretext,

masking discriminatory intent. *See Bickerstaff*, 196 F.3d at 446. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207).

■ Taking the facts in light most favorable to the plaintiff, the Court finds that the Plaintiff is able to meet the minimal threshold to establish a prima facie case of retaliation. The undisputed evidence shows that Edwards filed a claim of discrimination with the EEOC on November 20, 2001, and was subsequently terminated from employment on November 8, 2002, less than a year after filing his complaint.

The Defendant rebuts the prima facie case of retaliation by contending that it had a legitimate, non-retaliatory reason for terminating Edwards' employment. Namely, BSA states that Edwards' FAC certification, which granted him the authority to carry the required weaponry, was revoked by the DOE due to the two errors he made in using his MP5 machine gun. The first incident involved burning his finger and the second incident involved the accidental discharge into the clearing barrel. These incidents were within a sixteen months period. BSA argues that DOE's revocation of Edwards' FAC as a result of these incidents rendered him unable to perform his job as a SPO, and therefore BSA terminated his employment.

In response, Edwards has adduced evidence of retaliatory animus by way of disparate treatment. Edwards argues that he has evidence of similar errors being made by other SPOs in the use and handling of the MP5 that did not lead to revocation of the FAC certification. During discovery, the Plaintiff had the clearing barrel inspected for evidence of other accidental discharges and found four spent bullets in the barrel. At the trial, the Plaintiff intends to introduce the bullets and documents to show there were other incidents of accidental discharges into the clearing barrel that were similar to the accident involving the Plaintiff. Also, the Plaintiff has produced deposition testimony from two other BSA Police Officers who held the same position as the Plaintiff, both of whom testified that they had experienced accidental discharges of their weapons into the same clearing barrel in the presence of supervising officers. In these similar occurrences, the Plaintiff intends to show that BSA never investigated the circumstances of the accidental discharge and that they never resulted in a recommendation to revoke a SPO's weapon certification.

Assuming all of these facts are true, a reasonable jury could infer that Edwards was treated in a disparate manner due to his prior complaint of discrimination against BSA. Thus, the jury could find that the decisions to investigate the accidental discharge; recommend revocation of the FAC; and ultimately terminate Edwards, were influenced by retaliatory animus, a basis prohibited by the ADA. Accordingly, the Court is persuaded that Edwards has satisfied his burden with regard to his retaliation claim and denies the Defendant's motion for summary judgment.

### 2. The Motion to Strike Plaintiff's Demand for Compensatory Damages and a Jury Trial

■ The Defendant requests that the Court strike Edwards' claim for compensatory damages and jury demand with

respect to his retaliatory discharge claim, arguing that the ADA only provides equitable relief for retaliation claims. Although the Seventh Circuit in *Kramer v. Banc of Am. Secs. LLC,* 355 F.3d 961 (7th Cir.), *cert. denied,* 542 U.S. 932, 124 S.Ct. 2876, 159 L.Ed.2d 798 (2004), held that a plaintiff can only recover equitable relief for a retaliation claim under the ADA, the Second Circuit has not addressed this issue. Rather, it appears that the Second Circuit, without analyzing the issue, has affirmed an award of compensatory damages in a retaliation case brought under the ADA. *See, e.g., Muller v. Costello,* 187 F.3d 298 (2d Cir.1999); *see also Lovejoy–Wilson v. Noco Motor Fuels, Inc.,* 242 F.Supp.2d 236, 241 (W.D.N.Y.2003) (holding that compensatory and punitive damages are available to remedy an employer's retaliation based on a prior complaint of disability discrimination).

Other courts that have addressed the issue are divided. *Compare Rhoads v. FDIC,* No. 94–1548, 2002 WL 31755427, 2002 U.S. Dist. LEXIS 21865, at *1–2 (D.Md. Nov. 7, 2002) (allowing compensatory damages for a claim of retaliation under the ADA), and *Ostrach v. Regents of the University of California,* 957 F.Supp. 196, 200–01 (E.D.Cal.1997) (same), with *Santana v. Lehigh Valley Hosp. & Health Network,* No. 05–1496, 2005 WL 1941654, at *1, 2005 U.S. Dist. LEXIS 16677, at *1 (E.D.Pa. Aug. 11, 2005), and *Sabbrese v. Lowe's Home Ctrs., Inc.,* 320 F.Supp.2d 311 (W.D.Pa.2004), and *Sink v. Wal–Mart Stores,* 147 F.Supp.2d 1085, 1100–01 (D.Kans.2001) (finding that compensatory and punitive damages are not available for retaliatory discharge claim), *Boe v. Allied-Signal Inc.,* 131 F.Supp.2d 1197, 1202–03 (D.Kans.2001) (same), and *Brown v. City of Lee's Summit,* No. 98–0438, 1999 WL 827768, 1999 U.S. Dist. LEXIS 17671, *7–8 (W.D. Mo. June 1, 1999) (same); *see also Salitros v. Chrysler Corp.,* 306 F.3d 562,

570 (8th Cir.2002) (affirming without examining whether compensatory damages were authorized for an ADA retaliation claim); *EEOC v. Wal–Mart Stores, Inc.,* 187 F.3d 1241 (10th Cir.1999) (same).

Therefore the Court must decide in this case whether compensatory damages are permitted under the ADA. In general, a party is not entitled to a jury determination on the question of lost wages, whether in the form of back pay or front pay, because such awards have historically been considered equitable remedies. *Broadnax v. City of New Haven,* 415 F.3d 265 (2d Cir.2005) (citing *Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147, 157 (2d Cir.2001)). Thus, resolution of this issue not only impacts the type of relief that the Plaintiff is entitled to, but also determines whether he is entitled to a jury trial on this issue. *See, e.g.,* 8 James Wm. Moore, et al., Moore's Federal Practice–Civil § 38.33(e)(i).

In resolving this issue, the Court will look to sound principles of statutory interpretation and case law. *See Spector v. Norwegian Cruise Line Ltd.,* —— U.S. ——, 125 S.Ct. 2169, 2177, 162 L.Ed.2d 97 (2005). As with any other ordinary issue of statutory interpretation, the Court will examine the language of the statute "in light of context, structure, and related statutory provisions." *Exxon Mobil Corp. v. Allapattah Servs.,* —— U.S. ——, 125 S.Ct. 2611, 2620, 162 L.Ed.2d 502 (2005).

The ADA was enacted, in part, to assist in remedying the problems related to access by persons with disabilities to public facilities, employment, and transportation services. 42 U.S.C. §§ 12101–213. The Act is divided into three main subchapters known as "Titles" and one relevant fourth subchapter known as "Title V" which is named "Miscellaneous Provisions." Title I of the Act proscribes discrimination in the

terms and conditions of employment. *Id.* § 12111–17. Title II of the Act proscribes discrimination against the disabled regarding access to public services. *Id.* § 12132 ("No qualified individual with a disability shall ... be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). Title III of the ADA proscribes discrimination against the disabled in public accommodations. Id. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation.").

Each of these three primary subchapters contains its own remedies and enforcement provisions. *See* 42 U.S.C. §§ 12117, 12133, 12188. For example, a claim of employment discrimination under the provisions of Title I of the ADA entitle the prevailing plaintiff to those remedies available to plaintiff under Title VII of the Civil Rights Act of 1964, as amended by the Act of 1991. *See* 42 U.S.C. § 12117. Under the 1991 amendments to the Civil Rights Act of 1964, plaintiffs who prevail on claims of discrimination may recover compensatory and punitive damages, and thus also demand and receive a trial by jury. 42 U.S.C. § 1981a(c)(1).

The "Miscellaneous Provisions" in Title V of the ADA contain the retaliation provision. Section 12203 prohibits retaliation for complaints of disability discrimination by stating:

(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

42 U.S.C. § 12203. Unlike Titles I—III of the ADA, the retaliation provision contains no specific enforcement or remedial provision of its own. Rather, the statute states that "[t]he remedies and procedures available under sections [12117], [12133], and [12188] of this Act shall be available to aggrieved persons for violations of subsection[ ](a) ... with respect to title I, title II and title III, respectively." *Id.*

In the employment discrimination context, the retaliation provision in the ADA refers the reader to 42 U.S.C. § 12117 for its remedy, which in turn adopts the remedies set forth in Title VII, specifically 42 U.S.C. § 2000e–5 and 42 U.S.C. § 1981a(a)(2). *See id.* § 12117. Thus, the remedies for violations of § 12230 of the ADA and § 12117 of the ADA are coextensive with the remedies available in a private cause of action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5. Under the Civil Rights Act of 1991, employees who prevail on a claim under Title I of the ADA may recover compensatory and punitive damages and demand and receive a trial by jury. *See* 42 U.S.C. § 1981a(a)(2).

In *Kramer,* the Seventh Circuit concluded that the 1991 Civil Rights Act did not "expand the remedies available to a party bringing an ADA retaliation claim against an employer and therefore compensatory and punitive damages are not available." 355 F.3d at 965. The Seventh Circuit reached this conclusion by confining its analysis to a reading of § 1981a(a)(2), finding that it "permits recovery of compensatory and punitive damages ... only for those claims listed therein." *Id.* The court noted that "claims of retaliation under the ADA (§ 12203) are not listed," and thus concluded that the remedies available for

such claims are "limited to the remedies set forth in § 2000e(g)(1)." *Id.*

The Seventh Circuit's analysis makes it clear that § 1981(a)(1) does not list § 12203 as a claim that permits recovery of compensatory damages. However, "[n]o sound canon of interpretation requires Congress to speak with extraordinary clarity...." *Exxon Mobil Corp.*, 125 S.Ct. at 2620, 162 L.Ed.2d 502. The statute must be read in conjunction with and "in light of [the] context, structure, and related statutory provisions." *Id.* In the Court's view, the omission of § 12203 in § 1981 is of no consequence when § 1981 is read in conjunction with the relevant provisions of the ADA. As stated above, the retaliation provision of the ADA contains no remedy of its own. Rather, it is clear that the "remedies and procedures ... available to aggrieved persons" for violations of § 12203 are the *same* as the "remedies and procedures available under" Title I of the ADA. *Id.* Considering that the remedies available for retaliation under the ADA are commensurate with those available under Title I, it was unnecessary for Congress to separately mention retaliation in § 1981. Thus, it is fair to assume that the expansive effect of § 1981(a) applies equally to claims under Title I as it does to retaliation claims by virtue of the fact that the remedies available for retaliation claims incorporate, and are coextensive with, the remedies available under Title I.

Therefore, the Court finds that compensatory damages may be awarded on claims of retaliation under the ADA as they are in Title I. This conclusion is consistent with the "well settled" rule that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Barnes v. Gorman*, 536

U.S. 181, 189, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) (quoting *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). "The purpose of awarding damages in employment discrimination cases is to make the victim 'whole for injuries suffered on account of unlawful employment discrimination.'" *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir.1998) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). Case law makes clear that "[r]etaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment." *Jackson v. Birmingham Bd. of Educ.*, —— U.S. ——, 125 S.Ct. 1497, 1504, 161 L.Ed.2d 361 (2005). Accordingly, the Court finds that it is appropriate to allow compensatory damages and a jury trial for retaliation claims under the ADA.

## III. CONCLUSION

For all the foregoing reasons, it is hereby

**ORDERED,** that the Defendant's motion for summary judgment dismissing the Plaintiff's disability-based hostile work environment claim is GRANTED; and it is further

**ORDERED,** that the Defendant's motion for summary judgment dismissing the Plaintiff's retaliation claim is DENIED; and it is further

**ORDERED,** that the Defendant's motion to strike the Plaintiff's demand for compensatory damages and a jury trial is DENIED; and it is further

**ORDERED,** that all parties are directed to appear for trial in Courtroom 1020, Long Island Federal Courthouse, Central

Islip, New York on September 22, 2005 at 9:00 a.m.

**SO ORDERED.**