**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1382**

───────────────

JEFFREY B. ISRAELITT,

> Plaintiff - Appellant,

v.

ENTERPRISE SERVICES LLC,

> Defendant - Appellee,

and

HEWLETT PACKARD; HEWLETT-PACKARD COMPANY; HEWLETT-PACKARD ENTERPRISE COMPANY; HP INC.; DXC TECHNOLOGY COMPANY; DXC TECHNOLOGY SERVICES LLC; NETIQ CORPORATION, trading as Micro Focus,

> Defendants.

------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

> Amicus Supporting Appellant.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge.  (1:18-cv-01454-SAG)

───────────────

Argued:  March 9, 2023                                    Decided:  August 16, 2023

───────────────

Before KING and RICHARDSON, Circuit Judges, and Joseph DAWSON III, United States District Judge for the District of South Carolina, sitting by designation.

―――――――――

Affirmed by published opinion. Judge Richardson wrote the opinion, in which Judge King and Judge Dawson joined.

―――――――――

**ARGUED:** Levi S. Zaslow, HIJAZI, ZASLOW & CARROLL, P.A., Bowie, Maryland, for Appellant. James P. Driscoll-MacEachron, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Phoenix, Arizona, for Amicus Curiae. Heather Folsom Crow, KULLMAN LAW FIRM, Tallahassee, Florida, for Appellee. **ON BRIEF:** Allison A. Fish, KULLMAN LAW FIRM, New Orleans, Louisiana, for Appellee. Gwendolyn Young Reams, Acting General Counsel, Jennifer S. Goldstein, Associate General Counsel, Anne Noel Occhialino, Acting Assistant General Counsel, Appellate Litigation Services, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

2

RICHARDSON, Circuit Judge:

While working an IT position at Enterprise Services LLC, Jeffrey Israelitt says he was discriminated against because he has disability—an arthritic big toe. It's true that his brief stint at the company was mired with issues. The company says the issues arose because Israelitt didn't work well with others, and actually, didn't work much at all. Israelitt says the issues arose because of his alleged disability. After he was fired, he brought claims under the Americans with Disabilities Act asserting that Enterprise Services discriminated against him because of his toe and retaliated against him for seeking toe-related accommodations.

Those claims failed at various stages before the district court. At the summary-judgment stage, the district court held that Israelitt does not have a "disability," and so it rejected every claim except retaliation. For the retaliation claim, the district court held that Enterprise Services's only potentially retaliatory act was firing Israelitt and allowed him to take that claim to trial. But Enterprise Services moved to strike Israelitt's jury-trial demand. And, after reasoning that the Seventh Amendment does not guarantee a jury trial for ADA-retaliation plaintiffs, the district court granted the motion. Following the bench trial, the district court entered judgment for Enterprise Services on the remaining claim because Israelitt failed to prove he was fired because he asked for disability accommodations.

Israelitt primarily raises three issues on appeal. First, he says that the district court misinterpreted the ADA when holding he is not "disabled" by relying on an outdated EEOC regulation. But Israelitt is not "disabled" under any reasonable interpretation of the ADA.

3

Second, he says that the district court misstated the level of harm required for a retaliatory adverse action. Not so. *Burlington Northern*—which the district court applied—makes clear that a retaliation plaintiff must suffer "significant" harm, which comes from a "materially adverse" action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Third, he relies on a convoluted theory of statutory interpretation to argue that ADA-retaliation plaintiffs are guaranteed a jury trial by the Seventh Amendment. To the contrary, a straightforward reading of 42 U.S.C. § 1981a(a)(2) says otherwise. So we affirm the district court.

## I.      Background

Enterprise Services[1] hired Israelitt as a Senior Information Systems Security Architect, or in plain English, a high-level IT worker focused on cybersecurity. He had two main tasks: (1) conduct risk assessments for a product Enterprise Services was pitching to the Department of Homeland Security and (2) prepare a technology roadmap reviewing products in Enterprise Services's market space. But things did not go well during Israelitt's seven-month stint at the company.

The first major issue involved a customer-focused conference hosted by the company. The conference was a platform for Enterprise Services to showcase its products to customers. Customers attended for free. Employees, on the other hand, only attended if needed, in which case they were given passes or allocated funding to pay the registration

---

[1] Enterprise Services LLC was spun off from Hewlett Packard during litigation. Because the corporate restructuring is complicated and unimportant for purposes of this appeal, we refer to the defendant as Enterprise Services.

4

fees.    Israelitt's team—the Cybersecurity Solutions Group—requested that several members, including Israelitt, attend.  While that was in the works, an employee working on the event sent Israelitt and a few co-workers a customer code, allowing them to register for free.

After he was registered, Israelitt decided he wanted to stay at the event venue—a downtown D.C. hotel—rather than commute from his home in Glen Burnie, Maryland.  He thought commuting risked aggravating his toe condition.  So he tried to reserve a room, but the hotel was fully booked.  He then contacted event staff and obtained a hotel room reserved for handicapped patrons.  Around the same time—and possibly because the communications stirred a closer review of his registration—event staff flagged that Israelitt had improperly registered using a code reserved for customers.

This created issues for the employees who used the customer code, as they would "likely [ ] be turned down" from attending the event.  J.A. 782.  In the fallout, there was a scramble to determine whether the employees could still attend.  During that time, Israelitt became adamant about going and began pestering his supervisor, George Romas.  There was confusion about how the situation would resolve, and even when it appeared that the co-workers were cleared for attendance, questions remained about Israelitt.  Israelitt was not happy, and he escalated things.  He leveled accusations that his "medical/disability info" was the reason he could not attend.  J.A. 780.  But the Enterprise Services employee working on the event told a different story:  Israelitt had feigned a disability for preferential treatment from the hotel.  *See* J.A. 779 (claiming that Israelitt himself said he "really isn't handicapped but has a sore toe that he feels he can claim as a handicap").  Eventually,

5

Romas stepped in. Although the exact resolution reached is unclear, by the end of a forty-five-minute phone call, Israelitt agreed to not attend the conference and "keep his mouth shut." J.A. 778.

Israelitt's issues didn't end with the conference. He also had more mundane, interpersonal issues. He often hijacked a daily team call to air his grievances. He would then follow up on those grievances in lengthy emails to Romas. What's worse, he wasn't productive. Romas did his best to account for these shortcomings. He removed Israelitt from the daily calls, which Israelitt had "[n]o problem with." And he transitioned Israelitt to focusing on the technology roadmap, a longer-term project that he could work on under the tutelage of a more senior co-worker.

Things got a bit better, and Israelitt received a decent performance review. Still, interpersonal problems remained. As the review itself noted: Israelitt "has had a challenge adjusting" and "can be aggressive" so he "will be mentored and counseled on more diplomatic ways to communicate." J.A. 745. And his productivity didn't see a massive turnaround either. When Israelitt presented his progress on the technology roadmap a month later, he didn't have much to show.

While Israelitt kept working on the roadmap, a second major issue occurred. This one involved a company trip to Florida. The trip was intended to be a team-building trip for the Cybersecurity Solutions Group and was paid for by billing to the Department of Homeland Security account. During the planning stages, Israelitt became concerned over the amount of walking the trip involved. So—without indicating why in the request—he asked to be listed as an additional driver on the rental vehicle. Soon after, Israelitt was

6

effectively removed from the Department of Homeland Security project (when he was told to no longer bill to that client). Then, he was told that he would no longer go to Florida.

A month later, Romas sent Israelitt a formal performance warning. It gave Israelitt thirty days to "demonstrate immediate and sustained improvement by successfully completing" the technology roadmap. J.A. 623. At the end of the thirty-day period, Israelitt had made no meaningful progress and was fired.

He then sued under the ADA, demanding a jury trial to resolve his claims of discrimination, wrongful discharge, denial of reasonable accommodations, hostile work environment, and retaliation. His complaint describes his disability as "musculoskeletal issues" generally. J.A. 15. Yet the only impairment really at issue is his toe condition. To be precise, Israelitt has hallux rigiditis, which causes "degenerative changes at the metatarsophalangeal joint" and "calcaneal bone spurs" in his right big toe. J.A. 517. Nearly two decades before his employment at Enterprise Services, he twice had surgery to remove bone spurs from the toe. The condition can be painful, and Israelitt used shoe inserts and had a State of Maryland disability parking pass. But aside from the parking pass[2] and shoe inserts, the evidence that Israelitt was impaired by his toe condition was remarkably limited. He offered no evidence of medical care for the condition for over a

---

[2] Israelitt's own doctor said that "by strict interpretation of criteria, [Israelitt] does not qualify" for the parking pass. J.A. 831. In any event, we have no reason to think the meaning of disability under the ADA and Maryland law governing the issuance of disability parking passes are coextensive, so neither the parking pass nor the doctor's comment are determinative for purposes of our analysis.

7

decade.  And he did not use any assistive device to walk.  To the contrary, he walked unassisted for exercise several times a week, up to 30 to 45 minutes each time.

Following discovery, Enterprise Services moved for summary judgment.  The district court determined that Israelitt did not have a "disability" under the ADA, so it granted summary judgment on the discrimination, wrongful discharge, failure to accommodate, and hostile work environment claims.  This left only the retaliation claim.  For that claim, Israelitt alleged four retaliatory, adverse actions: (1) denial of the opportunity to attend the conference; (2) removal from the daily team calls; (3) denial of the opportunity to attend the team-building trip to Florida; and (4) termination.  The district court held the non-termination actions were not sufficiently harmful.  So those were out.  But the district court allowed the claim to survive on the termination adverse action, even though she questioned causation.

With only the retaliation claim remaining, Enterprise Services asked to strike the jury-trial demand.  Reasoning that an ADA-retaliation plaintiff has no right to a jury trial, the district court granted that request.  After the bench trial, the district court found there was no evidence—aside from the temporal proximity—that the termination was retaliatory.  So the district court entered judgment for Enterprise Services on the retaliation claim.  Israelitt appealed, and we have jurisdiction.

## II.    Discussion

The ADA prohibits employers from discriminating "on the basis of disability."  42 U.S.C. § 12112(a).  Israelitt brought claims of discrimination, wrongful discharge, failure to accommodate, hostile work environment, and retaliation under the ADA.  All of them,

8

except the retaliation claim, require Israelitt to show that he has a "disability." *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (discrimination); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001) (wrongful discharge); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (failure to accommodate); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001) (hostile work environment).  Since Israelitt does not have a disability, the court was right to grant summary judgment on every claim except retaliation.

The district court also properly granted judgment on the retaliation claim, but it takes more work to explain why.  First, the district court applied the correct level of harm for a retaliatory adverse action to dismiss the retaliation claims based on the conference, the team calls, and the team-building trip.  That left only the termination.  And, having correctly held that an ADA-retaliation plaintiff has no right to a jury trial, the district court properly found after a bench trial that Israelitt failed to prove that Enterprise Services fired him because he engaged in protected activity.

### A.      Israelitt does not have a "disability" under the ADA.

The ADA defines "disability" as "a physical or mental impairment that *substantially limits* one or more major life activities."[3]  42 U.S.C. § 12102(1)(A) (emphasis added). And, relevant here, it defines "major life activities" to "include . . . walking."[4]

---

[3] It includes other definitions as well, *see* § 12102(1)(A); *see also Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020), but they aren't at issue here.

[4] The statute's list of "major life activities" is long.  *See* § 12102(2).  But the parties—and the district court—focused on whether Israelitt's toe condition substantially limited his ability to walk, so we similarly limit our analysis.

§ 12102(2)(A).  The district court held that Israelitt did not have a "disability" under the ADA.  Israelitt objects.  He argues that the district court—in deciding his toe condition wasn't a disability—applied the wrong standard by citing an outdated EEOC regulation requiring a "significant restriction" on walking.  You might wonder whether there is a meaningful distinction between a "significant restriction" and the statute's "substantial limitation."  But even to the extent that there is a meaningful distinction, it makes no difference here.  We review de novo and under any reasonable interpretation of "disability" under the ADA, Israelitt doesn't have one.

We begin, of course, with the text.  A disability requires (1) "a physical or mental impairment" (2) "that substantially limits" (3) "one or more major life activities." § 12102(1)(A).  Beginning in 1999, the Supreme Court—in accord with EEOC regulations—narrowly interpreted this statutory text in several ways.  *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999).  One way was by reading "substantially limited" to require that in "performing . . . tasks, an individual must have an impairment that prevents or *severely restricts* the individual from doing [major life] activities."  *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (emphasis added).  This reading was required, the Supreme Court explained, because the statutory terms "need to be interpreted strictly" given the ADA's legislative findings and purposes.  *Id.* at 197.  This interpretation also tracked an existing EEOC regulation that explained that "substantially limits" meant "significantly restrict[s]" a major life activity.  29 C.F.R. § 1630.2(j)(l)(ii) (2000).

10

Congress, however, disagreed. Upset by these Supreme Court cases, similar lower court decisions, and the EEOC's regulations, Congress responded. It amended the ADA in 2008. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). Among other changes that are not at issue here, Congress addressed what it means to have an impairment that "substantially limits" an activity. But it did not change the actual statutory language defining "disability" (that is, it kept "substantially limits"). Instead, Congress added a background rule of construction: "substantially limits" should be interpreted in its full breadth. *See* § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."), (B) ("The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.").

You may think this is an odd way to amend a statute. After all, Congress could have changed the operative language defining the term. But just as Congress may define terms, so too may it provide background rules of construction. *See, e.g.*, The Dictionary Act, 1 U.S.C. §§ 1–8 (instructing courts to apply certain rules of grammatical construction to all federal statutes "unless context indicates otherwise"). And Congress exercised that authority here. It directed, contrary to the Supreme Court's "strict" construction, that we should construe the term "disability" in favor of broad coverage. Yet Congress made coverage broad, not universal. It placed a floor: interpret "disability" only to the "extent permitted by the terms." § 12102(4)(A).

11

How broad do the terms permit us to go?  We haven't decided.[5]  But we can find instruction from the Supreme Court.  Before adopting the "strict"-construction principle, the Supreme Court reminded us that when interpreting "disability" we are "guided first and foremost by the words of the disability definition itself."  *Toyota Motor Mfg.*, 534 U.S. at 196.  And it explained that the term "substantially," as used in "substantially limits," suggests the impairment must be "considerable" or "to a large degree."  *Id.* at 196–97 (citing Webster's Third New International Dictionary 2280 (1976) & 17 Oxford English Dictionary 66–67 (2d ed. 1989)).  This suggestion, the Court explained, "clearly precludes impairments that interfere in only a minor way."  *Id.* at 197.

This part of the Court's analysis stands.  How could it not?  Yes, Congress did away with the *Toyota* Court's insistence that a disability "severely restrict" the plaintiff.  *See* § 12101 (Findings and Purposes of Pub. L. 110–325); *see also Summers*, 740 F.3d at 329.  But it did not change the statutory requirement that a disability "substantially limit" the plaintiff.  Indeed, it reaffirmed our duty to apply that term as written.  *See* § 12102(4)(A).  And no interpreter looks at the word "substantial" and reasonably concludes it means

---

[5] While our Court has applied the ADA's definition of "disability" with its new congressional rule of construction, we have avoided drawing any precise lines.  *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330–32 (4th Cir. 2014); *Jacobs*, 780 F.3d at 572–74.  We do the same here.  Given that Israelitt's toe condition is not a "disability" no matter where the line is, we avoid attempting to draw it with precision.  *See Miller*, 813 F. App'x at 875 (finding on appeal that plaintiff was not disabled even where district court looked for an impairment that "significantly restricted").

"minor." So Congress's amendment did not abrogate *Toyota*'s observation that a "minor" limitation is definitionally not a "substantial" one.[6]

And that observation disposes of this case. Because one thing is for sure: Israelitt's impairment is minor, not substantial. He has an arthritic toe joint. His toe might be painful. And, on different facts, an arthritic toe joint might substantially limit *someone's* mobility. But it doesn't substantially limit Israelitt's. *Cf. Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1231 (2023) (Jackson, J., concurring) ("Other cases presenting different allegations and different records may lead to different conclusions."). There is no evidence that Israelitt's toe condition impacts his walking in any non-minor way. In fact, the record reveals quite the opposite: Israelitt often walked at length—unassisted—for both business and pleasure. So Israelitt does not have a "disability" within the meaning of the ADA. Thus, despite citing an outdated regulation requiring a "significant restriction," the district court was right to reject Israelitt's discrimination, wrongful discharge, failure to accommodate, and hostile work environment claims at summary judgment.

## B.    Israelitt's only "materially adverse" consequence was his termination.

This leaves only Israelitt's retaliation claim. Employers violate the ADA by retaliating against an employee for engaging in an ADA protected activity. *See* 42 U.S.C.

---

[6] Much of the EEOC's argument rests on its regulation interpreting the amended ADA. That regulation says that "substantially limits" does *not* mean the "disability" must "prevent, or significantly or severely restrict, the individual from performing a major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). It thus requires that there be a meaningful difference between "substantially limits" and "significantly restricts." Whether the EEOC's regulation is reasonable—and thus eligible for deference—is irrelevant here. We decide this case on a premise that the EEOC does not—and could not reasonably—contest: substantial does not mean minor.

§ 12203; *see also Jacobs*, 780 F.3d at 577.  Israelitt claims Enterprise Services retaliated against him in several ways for requesting disability accommodations.[7]  The district court first held that his requests plausibly constitute protected activity.  It then held that most of Enterprise Services's allegedly retaliatory actions—specifically, removing Israelitt from the daily calls and excluding him from the D.C. conference and Florida trip—were not adverse enough to qualify as unlawful retaliation since they did not cause significant harm.  Because retaliatory adverse actions must cause significant harm to be actionable, *Burlington N.*, 548 U.S. at 68, the district court properly rejected those adverse actions.[8]

The EEOC disagrees.  It argues the district court applied the wrong standard.  Retaliation claims require showing that a plaintiff suffered a "materially adverse" action.  *Id.*  The district court did not use the word "material" in its opinion.  Nor did it expressly discuss whether Enterprise Services's actions would have "dissuaded a reasonable worker" from taking a protected action—the Supreme Court's standard for a materially adverse action.  *Id.*  Rather, its analysis "center[ed]" on whether Enterprise Services's conduct created "significant detrimental effects." J.A. 45.  And that language, "significant detrimental effect," has more often been used to describe what is required to establish an adverse action in substantive discrimination claims rather than retaliatory discrimination

---

[7] He cites two alleged accommodation requests:  (1) for a hotel room at the D.C. conference and (2) to be listed as a driver for the Florida trip.

[8] *Burlington Northern* dealt with Title VII, rather than ADA, retaliation claims.  But "we treat the Title VII context as being 'analogous' to the ADA for this purpose." *Laird v. Fairfax Cnty.,* 978 F.3d 887, 893 n.5 (4th Cir. 2020) (quoting *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015)).

claims. *See, e.g.*, *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). Since what counts as an adverse action "differs slightly" between those two types of claims, the EEOC argues that the district court erred. *See Laird*, 978 F.3d at 893.

But the district court was correct that Israelitt's discrimination claims failed absent a showing that Enterprise Services's actions caused him some significant detriment. *See Laird*, 978 F.3d at 893. We have been clear that, whatever the differences in the adverse action standards for substantive and retaliation claims, "both claims share a common element: an adverse action, meaning some action that results in some significant detriment to the employee." *Id.* (cleaned up). So if Israelitt could not show that any of the challenged actions resulted in significant harm, he could not make out either type of claim and the district court was justified in merging the analysis. *See* J.A. 45 ("As outlined above in [the substantive discrimination section] Plaintiff has failed to demonstrate that [the challenged actions] are adverse actions.").

And *Laird*'s holding that both claims require showing a significant harm was not, as the EEOC implies, drawn from thin air. It is firmly rooted in *Burlington Northern*, which makes plain that—while the standard for retaliatory and substantive adverse actions differ—retaliatory adverse actions must cause significant harm. In that case, the Court answered two questions about retaliation claims: (1) Is "actionable retaliation [confined] to activity that affects the terms and conditions of employment?" and (2) "[H]ow harmful must the adverse actions be[ ]?" *Burlington N.*, 548 U.S. at 57. On the first question, the answer is no; this answer distinguishes retaliation claims from substantive ones. On the

15

second, more relevant question, the answer is it must cause a "significant" harm to the employee; this answer connects the two claims. *See id.* at 68; *Laird*, 978 F.3d at 893.

True, the Supreme Court placed the significant-harm requirement in the broader package of the "materially adverse" standard. It required that the retaliatory action be *materially* adverse. *Burlington N.*, 548 U.S. at 57. And it then explained that "materially adverse" means adverse actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*

But how harmful is an action that would "dissuade a reasonable worker"? "[P]etty slights, minor annoyances, and simple lack of good manners" won't do it. *Id.* at 68. Instead—according to the Supreme Court—the action must cause objectively "significant" harm. *See id.* at 68 ( "We speak of *material* adversity . . . to separate significant from trivial harms."). So, whatever you call the "materiality" standard, it requires significant harm.[9]

_____

[9] The EEOC responds by citing several Fourth Circuit cases adopting the "materially adverse" standard. *See* EEOC Br. at 13–15 (citing *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 n.2 (4th Cir. 2007); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342–43 (4th Cir. 2008); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Scurlock-Ferguson v. City of Durham*, 154 F. App'x 390 (4th Cir. 2015)). Fair enough, those cases *do* apply the "materially adverse" standard. But, crucially, those cases don't say that the "materially adverse" standard does not require "significant" harm. And they couldn't say that under the plain meaning of *Burlington Northern*.

The EEOC tried again in a Rule 28(j) letter citing *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212–18 (4th Cir. 2022). It argues *Laurent-Workman* "illustrates that, after *Burlington Northern*, the adverse action standards for retaliation claims and discrimination claims are different." Again, true, but *Laurent-Workman*—like *Lettieri*, *Darveau*, and *Schurlock-Ferguson*—does not say the new "materially adverse" standard does not require "significant" harm. To the contrary, *Laurent-Workman* acknowledges the significance requirement. *See* 54 F.4th at 213 (noting that the "materially adverse" standard "separates minor harms from those that threaten to chill employees from opposing unlawful discrimination"); *see also id.* at 217 ("The severity and frequency of hostility are important

The district court recognized all this. It did not require the harm to affect a condition of employment. J.A. 45 ("What qualifies as an adverse action *differs slightly* in the retaliation and unlawful discrimination contexts . . . in terms of the *scope of actions covered* (i.e. whether the acts and harm occurred in the workplace or not)." (emphasis added)) But—consistent with *Burlington Northern* and after citing *Laird*—the district court did require "significant" harm. J.A. 45. It may not have specifically used the term "materially adverse." But by looking for "significant" harm that could have existed beyond the scope of the workplace, the district court stayed true to the "materially adverse" standard. Because Israelitt could not show significant harm resulting from the non-termination actions, those bases for the retaliation claim failed.[10]

## C.      Israelitt did not have a jury-trial right for his ADA-retaliation claim.

All that remains is the retaliation claim based on Israelitt's termination. Israelitt wanted to present this claim to a jury. The right to a jury trial can stem from a statute itself. But the ADA itself provides no right to a jury trial. That, however, doesn't end the question.

---

factors to consider when determining whether the circumstances would dissuade a reasonable employee from opposing discrimination . . . .").

[10] While the EEOC only challenges the standard applied, Israelitt also argues that under the proper standard, his alleged adverse actions were sufficiently adverse. *See* Appellant's Br. at 52–53. Again, those adverse actions include (1) denial of the opportunity to attend the D.C. conference; (2) removal from the daily calls; and (3) denial of the opportunity to go on the trip to Florida. Would these actions dissuade a reasonable worker from making a charge of discrimination? No. Israelitt himself was content with being removed from the daily call when Romas proposed it. And while he may have genuinely been upset about missing the D.C. conference and Florida trip, that's the wrong question. We review the harm from an objective standard. *Burlington N.*, 548 U.S. at 68–69. Viewed objectively, missing the work conference and trip did not cause Israelitt "significant" harm.

When the statute provides no such right, the Seventh Amendment might: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII.  The Seventh Amendment's guarantee has been extended "to all suits, whether at common law or arising under federal legislation, where *legal* rights are involved." *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 828 (4th Cir. 1994).  To determine whether the Seventh Amendment provides a jury trial, we conduct a two-part inquiry that first compares "the nature of the issues involved and the statutory action" "to 18th–century actions prior to the merger of the courts of law and equity," and then, "more importantly," considers whether "the remedy available" is "legal or equitable in nature."  *Id.* at 829 (citing *Chauffeurs, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990)).

The Fourth Circuit has held that similar statutory actions are of the "nature" that "could be brought in either courts of law or courts of equity." *See id.* (reviewing disability-discrimination claims under the Rehabilitation Act for a jury-trial right).  So the first inquiry is inconclusive. *See id.*; *Terry*, 494 U.S. at 570.  That means the right to a jury trial turns on the answer to the second, "more important[ ]" question: whether legal remedies are available. *See Pandazides*, 13 F.3d at 829; *Terry*, 494 U.S. at 570, 573–74.  Every circuit court to answer that question, including our circuit in unpublished opinions, has held that they are not. *See Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269–70 (9th Cir. 2009); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 966 (7th Cir. 2004); *Tucker v. Shulkin*, No. 20-1317(L), 2020 WL 4664805, at *1 (3d. Cir. July 24, 2020); *Rhoads v. F.D.I.C.*, 94 F. App'x 187, 188 (4th Cir. 2004); *Bowles v. Carolina Cargo, Inc.*, 100 F.

18

App'x 889, 890 (4th Cir. 2004). Still, Israelitt and the EEOC argue that legal damages are available. To understand their argument, we must wade through the tangle of statutes that decides what remedies are available to ADA-retaliation plaintiffs.

We start with § 12203(c). It gives the ADA's remedies for retaliatory conduct. But it doesn't actually list remedies. Instead, for retaliation in the employment context, it refers readers to remedies "available under" 42 U.S.C. § 12117. *See* § 12203(c). Section 12117 is the remedies provision for 42 U.S.C. § 12112, which prohibits substantive ADA discrimination in employment. But while § 12117 mentions remedies, it doesn't actually provide them; it instead points to the remedies "set forth" in 42 U.S.C. § 2000e-5. *See* § 12117(a). Section 2000e-5 is the remedies provision for Title VII discrimination claims. Section 2000e-5 does, at last, list remedies, but only equitable ones. *See* § 2000e-5(g)(1). So, at the end of this statutory chain, ADA-retaliation plaintiffs are entitled to equitable remedies.

That's a lot to swallow. Walk through it again, step by step, with the statutory language:

1. Section 12203(a)—the ADA's antiretaliation section—provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." § 12203(a). But § 12203 does not give remedies, instead: "The remedies and procedures available under section 12117 . . . of this title shall be available . . . ." § 12203(c).

2. Section 12117 doesn't give us remedies either; it's a passthrough, which provides: "The powers, remedies, and procedures set forth in section[ ] . . . 2000e-5 . . . of this title shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the

19

basis of disability in violation of any provision of this chapter . . . concerning employment." § 12117(a).

3. Section 2000e-5 finally gives real answers: "[T]he court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate." § 2000e-5(g)(1).

Again, the statutory chain bottoms out in the equitable remedies listed in § 2000e-5.

But that isn't the end of our story. We must also consider 42 U.S.C. § 1981a. Section 1981a expands remedies for certain "Civil rights" and "Disability" plaintiffs, including some Title VII and ADA plaintiffs. Those plaintiffs—the statute says—"may recover compensatory and punitive damages." § 1981a(a)(1), (2). But legal damages are not available to ADA-retaliation plaintiffs under § 1981a either. Section 1981a(a)(2)—in listing the types of "Disability" plaintiffs entitled to legal damages—does not list ADA-retaliation actions. *See* § 1981a(a)(2). Instead, the statute says that an ADA plaintiff "may recover compensatory and punitive damages" for certain substantive discrimination and failure to accommodate claims. *See id.* ("In an action brought by a complaining party under . . . [§ 12117(a)] . . . against a respondent who engaged in unlawful intentional discrimination . . . , or who violated the requirements of [§ 12112(b)(5)] concerning the provision of a reasonable accommodation, . . . the complaining party may recover compensatory and punitive damages . . . ."*); see also Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999) (In § 1981a "Congress provided for additional remedies . . . for *certain classes* of Title VII and ADA violations." (emphasis added)).

20

Yet Israelitt and the EEOC try a different argument. They rely on a strained theory of statutory interpretation to say that—even though it does not list retaliation claims—§ 1981a(a)(2) still provides legal damages for ADA-retaliation plaintiffs. How so? Recall that § 12203 refers readers to remedies "available under" § 12117 and, in turn, those "set forth" in § 2000e-5. And § 1981a allows for § 12117 plaintiffs to recover legal damages. So, Israelitt and the EEOC argue, the right to recover legal damages meanders its way back through the statutory chain to ADA-retaliation plaintiffs.

What about the fact that § 1981a(a)(2) does not list ADA-retaliation plaintiffs—those asserting claims under § 12203—as among the ADA plaintiffs who may receive legal damages? Israelitt and the EEOC say that's no problem. In their view, it is "of no consequence when § 1981[a] is read in conjunction with the relevant provisions of the ADA." *Edwards v. Brookhaven Sci. Assocs., LLC*, 390 F. Supp. 2d 225, 236 (E.D.N.Y. 2005). That's because, they argue, "the remedies available for retaliation under the ADA are commensurate with those available under [§ 12117]," so "it was unnecessary for Congress to separately mention retaliation in § 1981[a]." *Id.*; *see also Rumler v. Dep't of Corr.,* 546 F. Supp. 2d 1334, 1343 (M.D. Fla. 2008) ("When Congress expanded the relief available under § 12117 to include legal damages, it also expanded the relief available under § 12203 by reference."). In other words, it "would have been redundant" for Congress to list § 12203 in § 1981a(a)(2) because § 12203 plaintiffs "could avail themselves of the same remedies as plaintiffs claiming discrimination under [§ 12117]." *Rumler*, 546 F. Supp. 2d at 1343.

21

We reject Israelitt and the EEOC's argument. Their logic gets it backwards. ADA-retaliation plaintiffs get the remedies "available under" § 12117. Yet compensatory and punitive damages are not a remedy "under" § 12117. Substantive-discrimination plaintiffs suing under § 12117 can get legal damages. But that is only because § 1981a(a)(2) makes compensatory and punitive damages available to them. Conversely, since § 1981a(a)(2) does not list ADA-retaliation plaintiffs, they cannot get legal damages under that section.

True, § 2000e-5 also says that the equitable remedies provided in subsection (g)(1) are available "[i]n addition to any relief authorized by section 1981a." § 2000e-5(e)(3)(B). But, read in its proper context, subsection (e)(3)(B) does not "set forth" remedies at all. And, even if subsection (e)(3)(B) did "set forth" remedies, that would require we ask: What "relief [is] authorized" by § 1981a? The answer to that question is § 1981a authorizes compensatory and punitive damages for "certain classes" of disability plaintiffs. *See Kolstad*, 527 U.S. at 534. Namely, ADA plaintiffs suing for either substantive discrimination or a failure to accommodate. § 1981a(a)(2). To look past the statutory silence and inject legal damages into § 12203 requires a statutory sleight of hand that "contravenes the basic tenets of statutory construction." *Alvarado*, 588 F.3d at 1268. There's simply no way around it: § 1981a(a)(2) provides legal damages only for specific ADA claims. And "ADA retaliation is not on the list." *Id.* at 1270.

Our holding that ADA-retaliation plaintiffs cannot recover legal damages places us in good company. The circuit courts (where they've spoken) have unanimously rejected Israelitt and the EEOC's reading. *See Alvarado*, 588 F.3d at 1270; *Kramer*, 355 F.3d at 965 (noting that "a meticulous tracing of the language of this tangle of interrelated statutes

22

reveals no basis for plaintiff's claim of compensatory and punitive damages in his ADA retaliation claim" (quoting *Brown v. City of Lee's Summit*, No. 98-0438-CV-W-2, 1999 WL 827768, at *3 (W.D. Mo. June 1, 1999))). Likewise, we've reached the same reading in unpublished opinions. *See Rhoads*, 94 F. App'x at 188; *Bowles*, 100 F. App'x at 890. We now adopt our reading in *Rhoads* and *Bowles* in a published opinion. ADA-retaliation plaintiffs are not entitled to legal damages. That means, under the inquiry from *Terry*, ADA-retaliation plaintiffs are not guaranteed a jury trial by the Seventh Amendment. *Cf.* 494 U.S. at 573–74. And the ADA itself doesn't provide that right either. Accordingly, Israelitt had no right to present his retaliation claim to a jury.

### D.     Israelitt did not prove causation at trial.

Israelitt makes one last-ditch effort: The district court erred in holding that he did not prove causation at trial. His challenge boils down to an argument that the district court improperly considered an exhibit that was not admitted into evidence during trial. This challenge fails.

Israelitt says the district court, in its final order following the bench trial, improperly relied on a performance review that Romas prepared. According to him, the district court used the performance review, which was included on Enterprise Services's exhibit list but never admitted into evidence, "to bolster its conclusion that Mr. Israelitt was a poor performer." Appellant's Br. at 53. Further, he says that performance review could not have been admitted into evidence because "it could not be authenticated or shepherded into evidence." *Id.* at 54.

23

In the final order, the district court determined that even if Israelitt engaged in protected activity, there was no causation. To the district court, the facts elicited at trial "unquestionably demonstrate[d] that his requests for accommodation had nothing to do with" his exclusion from the D.C. conference, the Florida trip, or the daily calls. Instead, the evidence "unequivocally" showed that Israelitt was "terminated because he was an incompatible teammate" who "failed to make any meaningful progress on tasks that were assigned to him." J.A. 77. Those factual findings receive clear-error review. *See* Fed. Rule Civ. P. 52(a). While it's true the district court cited an exhibit that was not admitted at trial, that was one of many pieces of evidence the district court relied on in reaching its determination. Even if the performance review was inadmissible evidence the court should not have considered, we cannot say that the district court clearly erred in holding that Israelitt could not establish causation.

\*          \*          \*

Israelitt's claims fail. First, while the district court did cite an outdated EEOC regulation when determining he is not disabled within the meaning of the ADA, he is not disabled under any reasonable reading of the ADA. So that disposes of every claim except retaliation. Second, *Burlington Northern* makes clear that only "significant" harm to an employee constitutes retaliatory adverse action. And only his termination met that threshold. Third, a straightforward reading of § 1981a(a)(2) shows that an ADA-retaliation plaintiff is not entitled to legal damages and therefore not guaranteed a jury trial by the Seventh Amendment. To close it out, the district court got it right at the bench trial.

24

Israelitt's termination was not in retaliation for any protected activity. Accordingly, the district court is

*AFFIRMED*.