**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2835
_____

STEVEN D'AGOSTINO,
Appellant

v.

SECRETARY UNITED STATES AIR FORCE
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1:19-cv-00281)
District Judge: Honorable Robert B. Kugler

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2024

Before: BIBAS, PORTER, and MONTGOMERY-REEVES, <u>Circuit Judges</u>

(Opinion filed: March 21, 2024)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Steven D'Agostino appeals a judgment entered by the District Court after a bench trial in his action against his former employer, the Secretary of the Air Force (the Air Force). We will affirm.

I.

The factual recitation that follows is drawn from the findings made by the District Court at the conclusion of the bench trial.[1]

D'Agostino was hired to be a "Visual Information Specialist" with the Marketing Department of the Air Force's 87th Force Support Squadron, a non-appropriated fund instrumentality ("NAFI") located at Joint Base McGuire Dix in Lakehurst, New Jersey.[2] He was subject to a twelve-month probationary period.

D'Agostino told the Air Force at the time of hiring that he suffered from a sleep disorder. He was permitted to start each workday at 10:00 a.m. rather than the standard (7:30 a.m.) time. Despite that, D'Agostino exhibited a pattern of arriving late, leaving early, and being absent from the office during core working hours, all without notice to his team. Not unrelated: There were multiple instances in which the amount of

---

[1] Insofar as we relate these findings, we have determined that they are not clearly erroneous. Cf. VICI Racing, LLC v. T-Mobile USA, Inc., 763 F.3d 273, 282–83 (3d Cir. 2014) ("On appeal from a bench trial, our court reviews a district court's findings of fact for clear error and its conclusions of law *de novo.* * * * 'To the extent that the District Court's conclusions rested on credibility determinations, our review is particularly deferential.'") (citations omitted).

[2] NAFIs are "established to generate and administer non-appropriated funds for programs and services contributing to the mental and physical well-being of Department of Defense personnel and their dependents." 32 C.F.R. § 756.2(a).

D'Agostino's biweekly paycheck differed from the amount he believed he was owed for the pay period.

Other problems marked D'Agostino's employment with the Air Force. Once, he took a government van home without authorization. On another occasion, he left the department's website inoperable at the end of the day. Additionally, after a special event at the base, a coworker detailed in a report that D'Agostino had been late, reluctant to help, quick to complain, and generally unreliable.

Roughly halfway through D'Agostino's probationary period, his supervisor had seen enough. The supervisor sought guidance from the Human Resources department about terminating D'Agostino and, the next month, began drafting a document to effect termination. The following day, D'Agostino confronted his supervisor about an alleged pay discrepancy and surreptitiously recorded their conversation. During the meeting, D'Agostino raised his voice and said he would file a grievance if the pay issue was not fixed. The supervisor subsequently emailed the Human Resources department, requesting permission to terminate D'Agostino.

Four days after that, D'Agostino filed an EEO complaint. A day later, D'Agostino received his notice of termination. The notice set forth that D'Agostino was being terminated due to multiple late arrivals, failing to keep his department apprised of his whereabouts, and not working well with others.

D'Agostino's EEO complaint was dismissed by the agency. He then filed in the District Court a pro se complaint against the Air Force, the U.S. Department of Defense, the U.S. Army, and several former supervisory employees. D'Agostino raised claims of

wrongful termination, discriminatory refusal to rehire, hostile work environment, and civil conspiracy. D'Agostino also claimed, under unspecified law, that he was owed $273 in unpaid wages (the backpay claim). D'Agostino alleged a causal connection between the Air Force's adverse employment actions on the one hand, and his sleep disorder and filing of an EEO grievance on the other.

Some of D'Agostino's claims fell prey to a Rule 12(b) motion to dismiss, others to a motion for summary judgment. Two claims against the Air Force survived to be tested at trial: a claim for retaliatory discharge under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the § 504 retaliation claim), and the backpay claim. At the close of a bench trial, the District Court entered judgment in favor of the Air Force, having asserted jurisdiction over the backpay claim under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).[3] D'Agostino appealed.

After the parties filed their briefs, the Clerk of this Court ordered supplemental briefing on whether the Little Tucker Act deprives this Court of jurisdiction over the appeal. Cf. 28 U.S.C. § 1295(a)(2) (providing that the Federal Circuit "shall have exclusive jurisdiction" over an appeal from a district court if the "jurisdiction of that court was based, in whole or in part," on a non-tax provision of the Little Tucker Act).

The Air Force argued in its supplemental brief that the Federal Circuit has jurisdiction over this appeal insofar as "the district court's jurisdiction was based in part

---

[3] The Little Tucker Act gives federal district courts jurisdiction, concurrent with that of the U.S. Court of Federal Claims, over federal-law claims seeking $10,000 or less in damages against the United States.

on the Little Tucker Act." Doc. 40 at 5. D'Agostino, meanwhile, opined that it is not clear where appellate jurisdiction lies, though he "lean[s] toward" the Federal Circuit. Doc. 41 at 5. At the same time, D'Agostino stands by his position "that the Tucker Act should not have been involved, because I had never pleaded my cause of action for the unpaid wages as a breach of contract." Doc. 41 at 4.

II.

Whether we can exercise jurisdiction here depends on whether the District Court's exercise of Little Tucker Act jurisdiction was proper. If it was, we must transfer the appeal to the Federal Circuit. See 28 U.S.C. § 1295(a)(2); Bedrosian v. IRS, 912 F.3d 144, 150 (3d Cir. 2018). If it was not proper, we can resolve this appeal on the merits.

We have jurisdiction to decide this question of our and the District Court's jurisdiction. See Zurn Indus., LLC v. Allstate Ins. Co., 75 F.4th 321, 326 (3d Cir. 2023) ("We always have jurisdiction to determine our own jurisdiction."); Smith v. Orr, 855 F.2d 1544, 1547 (Fed. Cir. 1988) ("Congress, pursuant to 28 U.S.C. § 1295, did not remove the power from all other circuits to decide for themselves whether jurisdiction of the district courts in given cases was based on the Little Tucker Act."). After setting forth general principles governing our inquiry, we assess whether there is a viable connection between D'Agostino's backpay claim and a source of federal substantive law, ultimately concluding that there is not. The consequence of that conclusion is a determination that the Little Tucker Act did not provide the District Court with a means to exercise jurisdiction over the backpay claim.

To start: The Little Tucker Act effects a waiver of the immunity from suit generally enjoyed by the United States, see FDIC v. Meyer, 510 U.S. 471, 475 (1994), in the case of federal-law claims for which $10,000 or less in damages is sought, see 28 U.S.C. § 1346(a)(2) (predicating Little Tucker Act jurisdiction on claimed violations of "the Constitution, or any Act of Congress, or any regulation of an executive department, or . . . any express or implied contract with the United States"). The Little Tucker Act does not itself create a private right of action. See United States v. Mitchell, 463 U.S. 206, 216-17 (1983). So a separate source of federal law must be identified. See United States v. Testan, 424 U.S. 392, 398 (1976).

In locating that source of law in D'Agostino's case, we are not bound by the parties' characterizations of the backpay claim below. See Chandler v. U.S. Air Force, 272 F.3d 527, 529 (8th Cir. 2001); cf. Hahn v. United States, 757 F.2d 581, 587 (3d Cir. 1985) ("We may, on appeal, consider whether jurisdiction was proper on grounds—such as the Tucker Act—not asserted below.").[4] That said, we have considered the three

---

[4] D'Agostino's operative pleading did not tie his backpay claim to a body of substantive law; it asserted instead that the action was predicated on violations of, inter alia, "common law, both tort and contract." DC ECF No. 10 at 1. Early on in the litigation, though, there appeared to be a consensus forming around New Jersey state law as the source of substantive law animating the backpay claim. For example, in denying the Air Force summary judgment on that claim, the District Court said this: "Plaintiff seeks recompense for hours he purportedly worked without pay. The parties appear to agree that this claim falls under New Jersey state law." DC ECF No. 42 at 24. Things changed when trial drew near and the Air Force, looking to strike D'Agostino's jury demand, argued that the backpay claim was "more appropriately characterized as a [federal-law] breach of contract [claim] arising from his terms and conditions of his employment as set forth in" an Air Force procedural manual. DC ECF No. 50 at 6. D'Agostino argued in response that he could "recover my unpaid wages under either N.J. state law, which this Court would have supplemental / pendent jurisdiction to hear, and/or also under the Fair

6

possible ways to situate the backpay claim in federal substantive law (and the Little Tucker Act as a result) that the parties and District Court have heretofore identified: (1) supplemental jurisdiction under 28 U.S.C. § 1367; (2) the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; and (3) breach of contract, with the contract being the Air Force Manual 34-310 (the Manual).[5] Ultimately, none of these ways supports a viable construction of the backpay claim.

Initially, D'Agostino's reliance on § 1367 can be dismissed out of hand. Supplemental jurisdiction does not transform state-law claims into federal ones, including for purposes of the Little Tucker Act. See Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. United States, 22 F.3d 741, 744 (7th Cir. 1994) (agreeing with "cases from other circuits"—including our decision in Hahn, supra—"which found that an express limitation embodied in the Tucker Act cannot be overcome by supplemental jurisdiction"); see also Dia Nav. Co. v. Pomeroy, 34 F.3d 1255, 1267 (3d Cir. 1994).

Also unavailing is D'Agostino's reliance on the FLSA. For jurisdiction under the Little Tucker Act to be permissible under the FLSA route, D'Agostino would have had to make a "nonfrivolous assertion" that he is "within the class of plaintiffs entitled to recover" under that law. Jan's Helicopter Serv., Inc. v. FAA, 525 F.3d 1299, 1307 (Fed.

---

Labor Standards Act (FLSA)." DC ECF No. 60 at 3 (internal citations omitted). The District Court agreed with the Air Force "that the unspecified unpaid wages claim is best understood as a contract claim for which the government waives its sovereign immunity under the Little Tucker Act." DC ECF No. 87 at 2.

[5] The Manual has been described as establishing "the procedures for managing and administering employees of [NAFIs], which includes civilian employees." Kelsey v. Donley, DC Civ. No. 09-cv-21125, 2010 WL 1768577, at *3 (S.D. Fla. May 4, 2010).

Cir. 2008); see also Solano v. United States, 164 Fed. Cl. 792, 796 (Feb. 28, 2023). But he could not have done so, because ordinary claims for back wages are indisputably non-cognizable. See Davis v. Abington Mem'l Hosp., 765 F.3d 236, 244 (3d Cir. 2014).

The Manual, relied on by the Air Force and the District Court, requires only slightly greater attention. It is presumed that federal employees are appointed, rather than contracted with, by the Government. See Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985) (observing the "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government."); see also Kizas v. Webster, 707 F.2d 524, 538 (D.C. Cir. 1983). The appointment/contract distinction may be dispositive of the jurisdictional issue insofar as an appointed employee in the usual circumstance does not have an employment contract with the Government, and thus does not possess a contract-based cause of action covered by the Little Tucker Act. See, e.g., *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 739–41 (1982) (denying Tucker Act jurisdiction over *appointed* Army employee's breach of contract claim); *United States v. Hopkins*, 427 U.S. 123, 129-30 (1976) (per curiam) (holding that Tucker Act confers no jurisdiction over *appointed* civilian Army employee's claim for breach of employment contract); cf. Shaw v. United States, 640 F.2d 1254, 1260 (Ct. Cl. 1981) ("Plaintiff may not base his theory of recovery on contract law since he was a federal employee.").

D'Agostino does not attempt to direct our attention to any evidence or statute or regulation indicating that his employment with the Air Force was rooted in contract

8

rather than appointment. The Air Force and the District Court cited the Manual as supporting the notion that D'Agostino had a contractual relationship with the Air Force, but the Manual does no such thing. Rather, the Manual makes clear many times over that the typical NAF employee like D'Agostino is appointed to his position, see, e.g., Supp. App. 447-50, 490 (§§ 1.4, 1.5, 1.7.1, 4.3.6), most notably by describing his employment status with reference to 5 U.S.C. § 2105(c)(1) (providing that NAF personnel are "employee[s]" under 5 U.S.C. § 2105(a)—i.e., they are "appointed in the civil service"— with the qualification that they are not subject to many of "the laws administered by the Office of Personnel Management").

For all of those reasons, it was error for the District Court to exercise Little Tucker Jurisdiction over the backpay claim. The claim should have instead been construed as one arising under New Jersey's wage-and-hour regime, see, e.g., N.J. Stat. Ann. § 34:11-4.1 et seq.; N.J. Stat. Ann. § 34:11-56a et seq.,—as it had been for a good chunk of the litigation—and dismissed on grounds of sovereign immunity. On that alternative ground, the District Court's dismissal of the backpay claim will be affirmed.

## III.

With our appellate jurisdiction under 28 U.S.C. § 1291 secure, we now turn to the merits of D'Agostino's appeal. And, preliminarily, we must observe that D'Agostino has forfeited a number of merits issues by presenting them only in a cursory manner, including instances in which he merely references filings in the District Court. See Fed. R. App. P. 28(a); Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993); see also Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d

9

Cir. 1994) (stating that parties forfeit review of issues by making only passing reference to the issues in their opening briefs); United States v. Gonzalez, 905 F.3d 165, 206 n.18 (3d Cir. 2018) (noting that mere reference to district court documents does not equate to properly raising an issue on appeal). Nevertheless, we have reviewed the record and are satisfied that D'Agostino's arguments on appeal all lack merit, for substantially the reasons given in the District Court's various opinions. We elaborate only as follows.

First, we discern no error in the District Court's case-management rulings. For example, we agree that the Air Force's cross motion for summary judgment was timely because it was filed by the District Court-imposed deadline for dispositive motions and served on D'Agostino afterward, which, contrary to his argument, was consistent with Fed. R. Civ. P. 5(d). See Fed. R. Civ. P. 5(d) advisory committee's note to 2018 amendment (clarifying that "it is proper to file a paper before it is served"). In addition, the District Court's decision to terminate both parties' initial summary judgment motions and reset the motion schedule was squarely within its discretion; ensuring a complete record for resolution of the motions, moreover, did not prejudice either party. See Fed. R. Civ. P. 56(e); see also In re Fine Paper Antitrust Litig., 685 F.2d 810, 817–18 (3d Cir. 1982) (according district courts great deference on matters of case management and deeming interference appropriate only upon the clearest showing of actual and substantial prejudice).

Additionally, we discern no error in the District Court's decision to grant summary judgment to the Air Force on D'Agostino's hostile-work-environment claim. D'Agostino's evidence of his coworkers' slights—allegedly ignoring his birthday,

10

excluding him from social conversations, not saying hello or "god bless you" to him, and so forth—do not come close to constituting intimidation, ridicule, or insult that is so severe or pervasive that it created an objectively abusive workplace. See Harris v. Forklift Syst., Inc., 510 U.S. 17, 21 (1993).

We also discern no error in the District Court's decision to conduct a bench trial on D'Agostino's retaliation claim under the Rehabilitation Act.[6] The only remedies available for such claims, see 29 U.S.C. § 794a(a) (incorporating 42 U.S.C. § 2000e-5(g)(1)), are equitable in nature, see Israelitt v. Enter. Servs. LLC, 78 F.4th 647, 660 (4th Cir. 2023) (holding that because § 2000e-5(g)(1) prescribes "only" equitable remedies, "ADA-retaliation plaintiffs are not entitled to legal damages."); Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1270 (9th Cir. 2009) (same); Kramer v. Banc of Am. Sec., LLC, 355 F.3d 961, 965 (7th Cir. 2004) (same); cf. Richerson v. Jones, 551 F.2d 918, 926 (3d Cir. 1977). So D'Agostino was not guaranteed a jury trial. See Cox v. Keystone Carbon Co., 861 F.2d 390, 392 (3d Cir. 1988) ("Where the particular remedial section in the statute provides for only equitable remedies then no right to a jury trial exists.").

Furthermore, and having examined the record as a whole, we conclude that there is no merit to D'Agostino's contention that the District Judge improperly participated in the bench trial. It was well within the District Judge's discretion to question witnesses, and he did not stray improperly into taking on an advocacy role. See Fed. R. Evid. 614(b)

---

[6] Based on our conclusion above that the District Court lacked jurisdiction under the Little Tucker Act over the backpay claim, we have no need to decide whether a jury trial was required for that claim. But the answer to the question seems fairly obvious from the text of 28 U.S.C. § 2402.

& annotation. Beyond the fact that D'Agostino failed to contemporaneously object in relevant instances, the District Judge's sporadic interjections and clarifications were directed at both parties, did not prejudice either party on balance, and were indicative of a permissible search for truth in the context of a bench trial. See United States v. Wilensky, 757 F.2d 594, 597 (3d Cir. 1985) (internal citations omitted) (explaining that the trial judge is not forbidden from participating in the conduct of a trial since "a trial is not a contest but a search for the truth so that justice may be properly administered").

Finally, we discern no error, let alone clear error, in any of the District Court's factual findings underpinning its resolution of the § 504-retaliation claim. And because those findings confirm that any protected activity D'Agostino engaged in was unconnected to his termination, the "no cause" verdict was, contrary to D'Agostino's insistence, warranted. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (explaining that an element of a § 504-retaliation claim is "that there was a causal connection between the protected activity and the retaliatory action" and, further, that "[a] defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity").

Accordingly, for the reasons given above, we will affirm the judgment of the District Court. D'Agostino's pending motions are denied.